**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

RONNELL DUNN,

                                      Petitioner,

v.

RALPH DIAZ, Secretary, et al.,

                                      Respondents.

Case No.:  19cv1554-LAB (MSB)

**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

Presently before the Court is a First Amended Petition for a Writ of Habeas Corpus filed by Ronnell Dunn pursuant to 28 U.S.C. § 2254.  (ECF No. 16.)  Respondent has filed an Answer and Petitioner a Traverse.[1]  (ECF Nos. 17, 21.)

**I.    BACKGROUND**

Petitioner, a state prisoner proceeding pro se and in forma pauperis, was convicted in the San Diego County Superior Court of carjacking, robbery and being a felon in possession of a firearm, for which he was sentenced to 20 years and 4 months in state prison, enhanced as a result of a prior felony conviction and jury findings of personal use

---

[1]  Although this case was referred to United States Magistrate Judge Michael S. Berg pursuant to 28 U.S.C. § 636(b)(1)(B), the Court has determined that neither a Report and Recommendation nor oral argument are necessary for the disposition of this matter.  *See* S.D. Cal. Civ.L.R. 71.1(d).

of a firearm.  (ECF No. 11-1 at 187-92.)  He claims here, as he did in state court, that his federal constitutional rights were violated by prosecutorial misconduct during closing argument (claim one), by ineffective assistance of trial counsel for failing to object to that misconduct and the cumulative effect of those two errors (claim two), and because insufficient evidence exists to support the jury verdicts and by ineffective assistance of appellate counsel for failing to raise this claim on appeal (claim three).  (ECF No. 16 at 6-9, 50-62, 72-77.)

Respondent answers that habeas relief is unavailable because claims one and three are procedurally defaulted, and because the state court adjudication of claims one and two is neither contrary to, nor an unreasonable application of, clearly established federal law. (ECF No. 17 at 5-8.)  Petitioner replies in his Traverse that the state court did not clearly and expressly apply an adequate and independent state procedural bar sufficient to support a procedural default and unreasonably applied clearly established federal law.  (ECF No. 21 at 1-11.)  He contends he is entitled to an evidentiary hearing.  (*Id*. at 2.)

## II.    State Court Proceedings

On January 16, 2018, a jury found Petitioner guilty of carjacking, burglary and possession of a firearm by a felon.  (ECF No. 11-1 at 93-95.)  The jury returned true findings that the first two offenses were committed with the personal use of a firearm.  (*Id*. at 93-94.)  Petitioner admitted he had a prior felony conviction for assault with a deadly weapon which constituted a "strike" within the meaning of California's Three Strikes law. (*Id*. at 188.)  He was sentenced on count one to ten years plus a consecutive four-year term for the firearm use enhancement, on count three to a consecutive term of sixteen months, and for his prior felony conviction a consecutive term of five years, with the terms on count two and the remaining enhancements stayed or stricken, for a total sentence of twenty years and four months in state prison.  (*Id*. at 190-92.)

Petitioner appealed, raising claims one and two presented here.  (ECF No. 11-10 at 17-24.)  On December 31, 2018, the appellate court affirmed the convictions.  It found the prosecutorial misconduct claim had been waived by a failure to object at trial but that in

any case there was no prosecutorial misconduct or ineffective assistance of trial counsel, and remanded for the trial court to apply a newly enacted law providing discretion to strike the prior conviction. (ECF No. 11-15, *People v. Dunn*, No. D073799, slip op. (Cal.App.Ct. Dec. 31, 2018).) Petitioner presented the same claims to the state supreme court in a petition for review (ECF No. 11-16), which was summarily denied on March 13, 2019. (ECF No. 11-17.) On April 19, 2019, the trial court declined to exercise its discretion to strike the prior conviction and imposed the same sentence. (ECF No. 18-1 at 4.)

Petitioner raised claim three in a series of habeas petitions filed in the state superior (ECF No. 18-1 at 6-14), appellate (ECF No. 18-1), and supreme (ECF No. 18-3) courts. The state supreme court summarily denied the petition (ECF No. 11-19), the appellate court denied it as untimely, for failure to raise the claim on appeal, and because it is not cognizable on habeas (ECF No. 18-2), and the superior court denied it for failure to raise the claim on appeal and because it is not cognizable on habeas. (ECF No. 18-1 at 4-5.)

## III.   Evidence Presented at Trial

Lefen Jamil testified that on June 22, 2017, he and his friend Courtney Wong drove Jamil's 2016 white Honda Accord to a park near the El Cajon Courthouse where they walked around the park smoking marijuana. (ECF No. 11-6 at 6-9.) When they returned to the car, Jamil saw a dark blue or navy Chevrolet Impala with three Black males sitting inside parked next to his Honda with one open parking space between their cars. (*Id*. at 11.) As Jamil opened his driver's door, a man from the Impala wearing a black t-shirt and greenish-brown military style pants, who Jamil identified in court as Petitioner, approached quickly, pressed a handgun to Jamil's chest and said: "Give me your wallet, give me your car and your money and your phone." (*Id*. at 12-14.) Jamil recognized the gun as real based on his fourteen years of experience training military personnel in weapons use. (*Id*. at 14-16.) Jamil grabbed the gun, which Petitioner was holding in his right hand, and pushed Petitioner away. (*Id*. at 18-19.) Petitioner pushed the gun harder into Jamil's chest, again demanded "everything," and Jamil capitulated. (*Id*. at 19.) Petitioner searched Jamil and took a phone from his pocket and keys from his hand. (*Id*. at 20-21.) Petitioner walked

Jamil and Wong to a grassy area nearby and left them there.  (*Id*. at 23.)  Jamil watched as someone he could not see drove off with his car while the Impala drove away.  (*Id*. at 24-25.)  Jamil borrowed a phone from someone playing basketball nearby and called 911, a recording of which was played for the jury.  (*Id*. at 26, 28.)  A transcript of the call indicates Jamil described the man who robbed him as Black, 30-35 years old, short, chubby, and wearing a black shirt and brown or camo military style pants.  (ECF No. 11-1 at 101.)  He described the other car as a navy or black Chevrolet 500, Malibu or Impala.  (*Id*. at 102.)

Jamil retrieved his Honda from an impound yard the next day.  (ECF No. 11-6 at 28.)  He then drove to an AM/PM market where he saw Petitioner walking into the store with the same Chevrolet Impala parked at the gas pumps with a woman and child inside.  (*Id*. at 29-30.)  Petitioner and Jamil made eye contact and Petitioner mouthed the words: "What's up motherfucker?"  (*Id*. at 30.)  Jamil chased Petitioner but only for a few seconds because Petitioner "vanished" and because Jamil was concerned he might still be armed.  (*Id*. at 30-31.)  Jamil had a new phone and took a photograph of the Impala's license plate which he emailed to Officer Bellwood.  (*Id*. at 32.)  He was contacted by Detective Stanley who showed him a photographic lineup from which he identified Petitioner.  (*Id*. at 32-33.)

Courtney Wong testified to the same events regarding driving to the park in Jamil's car and walking around the park smoking marijuana.  (*Id*. at 57-62.)  As he was entering Jamil's car after their walk, he felt something like a gun against his rib cage and heard a man behind him say: "Give me everything you fucking got."  (*Id*. at 63-64.)  He took off his watch and offered it to the man along with his phone, who "snatched" them from his hand.  (*Id*. at 64-65.)  He described that man as Black, about 5'-6" or 5'-7" tall, wearing a dark hoodie, dark jeans and a White Sox ballcap.  (*Id*. at 65-66.)  That man and the man who robbed Jamil, who Wong did not get a good look at, walked them away from the car and told them to run.  (*Id*. at 69-70.)  They jogged to a nearby basketball court where Wong turned around and saw a third man, a tall Black man wearing a white t-shirt and red hat, enter Jamil's car and drive away followed by another car parked near Jamil's car which Wong described as a dark Ford or Chrysler.  (*Id*. at 70-73.)  Wong said Jamil borrowed a

4

phone from someone on the basketball court and called 911.  (*Id*. at 73-74.)  Police officers arrived a few minutes later, about 9:00 p.m.  (*Id*. at 74, 156.)

John Ampole, a San Diego Police Officer, testified that at 7:52 p.m. on June 22, 2017, while in a marked police car on traffic duty, he pulled over for speeding a black Chevrolet Malibu with license plate 6ARF320 driven by Petitioner northbound on the 805 freeway near Adams Avenue.  (*Id*. at 95-102.)  Body camera video showed two other men in the car and showed Petitioner signed the citation with his left hand.  (*Id*. at 98-101.)

Brandon Stanley, a Detective with the El Cajon Police Department, testified that no DNA or fingerprints were recovered from Jamil's stolen Honda.  (*Id*. at 105.)  Detective Stanley was informed by Officer Bellwood that an emailed photograph of the suspect's car showed it had license plate 6ARF320, which was registered to Petitioner.  (*Id*. at 106.)  He showed a six-pack photographic lineup card with photographs of Petitioner and five other individuals to Jamil, who chose Petitioner.  (*Id*. at 106-09.)  Detective Stanley described Petitioner's physical description on September 13, 2017, as 5'-4" to 5'-6" in height and 150 pounds.  (*Id*. at 112.)  The jury was read a stipulation that Petitioner "was convicted of a felony prior to June 22, 2017," and the prosecution rested.  (*Id*. at 132.)

The defense called Marc Halcon who testified he owns a firing range and is a certified firearms instructor.  (*Id*. at 134-36.)  He reviewed reports which indicated the victim reported that a left-handed perpetrator held a gun to his chest with his right hand.  (*Id*. at 149.)  Halcon testified that 95% of the time a right-handed person would hold a handgun in this right hand while using it.  (*Id*. at 147-48.)

The defense called Philip Disque, a City of El Cajon Police Officer, who testified that he took a statement from Lefen Jamil about at 9:00 p.m. on June 22, 2017, while accompanied by his partner Officer Bellwood.  (*Id*. at 156.)  Jamil did not say he had been smoking marijuana when Officer Disque first spoke to him, but when they spoke a second time with Officer Bellwood and Wong present, Jamil said he had been smoking marijuana. (*Id*. at 157-58.)  The parties stipulated that if called Officer Bellwood would testify he responded to the incident on June 22, 2017, and Courtney Wong told him he and Jamil had

smoked marijuana in their car in the parking lot, walked in the park smoking marijuana, and had returned to their car where they continued to smoke marijuana when a man approached Jamil's side of the car, who Wong described as Black, with buzz-cut short hair, about six-feet tall, much taller than Jamil, with a heavy build wearing a short-sleeved black t-shirt, no hat and possibly a goatee.  (ECF No. 11-8 at 7-8.)  Wong described a second man as a Black male, 5'-6" to 5'-7" tall with no facial hair wearing blue jeans and a black t-shirt, with a heavy build and wearing a black hat with a White Sox logo.  (*Id*. at 8.)  Wong also said the car those men came from was parked three or four parking spaces away from Jamil's car.  (*Id*.)  It was stipulated that Jamil told Officer Bellwood he was smoking marijuana in his car when a man approached with a gun in his right hand who he described as the same height as himself, about 5'-4" to 5'-6" tall, Black, bald, kind of chubby, 180 to 190 pounds, wearing a black t-shirt and brown or green military pants.  (*Id*. at 8-9.)  He described their car as either a Chevrolet Impala or 500 with dark spots with only one parking stall between their cars.  (*Id*.)  The defense rested and there was no rebuttal.

As relevant to claims one and two here, at the beginning of closing argument, just after discussing the elements of the crimes and the instructions, the prosecutor remarked: "Which brings us down to the core of this case.  Did Mr. Dunn do these crimes?  [¶] Obviously, I believe he did or I wouldn't be here telling you these things, but let's look at the evidence."  (*Id*. at 30-31.)  Defense counsel did not object to that statement, and in fact gave a similar personal opinion during closing argument that "it is incredulous to me that this is the truth about the person charged," and argued this was a case of mistaken identity in that: (1) Petitioner was wearing grey sweat pants when he was issued a traffic citation heading away from El Cajon about an hour before the incident; (2) Petitioner is left-handed but Jamil said he held the gun in his right hand which conflicted with expert testimony, (3) the victims were high on marijuana and the physical descriptions they gave the police of the man who robbed Jamil did not match Petitioner's physical description, and (4) the victims' statements to the police conflicted in numerous ways with their trial testimony.  (*Id*. at 40-52.)  The jury deliberated for just under an hour before finding Petitioner guilty

of carjacking and robbery with the personal use of a firearm and possession of a firearm by a felon.  (ECF No. 11-1 at 187-88.)

## IV.    Petitioner's Claims

(1)   The prosecutor's remark that he believed Petitioner was guilty amounted to impermissible personal vouching for the appropriateness of a guilty verdict in violation of Petitioner's Fifth and Fourteenth Amendment rights to due process and a fair trial.  (ECF No. 16 at 6, 20-24, 72-77.)

(2)   Defense counsel's failure to object to the prosecutor's remark violated Petitioner's Sixth and Fourteenth Amendment right to the effective assistance of counsel, and the cumulative effect of those two errors violated his Fifth and Fourteenth Amendment right to due process.  (*Id.* at 7, 24-26, 30-32, 72-77.)

(3)   Insufficient evidence was adduced at trial to support his involvement in the crimes because the unreliable, inconsistent, conflicting, false and prevaricated testimony of the intoxicated witnesses is insufficient to prove Petitioner rather than one of the other men present robbed Jamil and took his car, and Petitioner's appellate counsel rendered ineffective assistance by failing to raise this claim on appeal.  (*Id.* at 9, 27-28.)

## V.    Discussion

As set forth herein, habeas relief is unavailable because claims one and three are procedurally defaulted and Petitioner has failed to excuse the default, and because the state court adjudication of claim two is neither contrary to nor an unreasonable application of clearly established federal law nor based on an unreasonable determination of the facts.

### A.    Legal Standards

Under the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, in order to obtain federal habeas relief with respect to a claim which was adjudicated on the merits in state court, a federal habeas petitioner must demonstrate that the state court adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision

that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

A state court's decision may be "contrary to" clearly established Supreme Court precedent (1) "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent."  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  A state court decision may involve an "unreasonable application" of clearly established federal law, "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case."  *Id*. at 407.  In order to satisfy § 2254(d)(2), the factual findings relied upon by the state court must be objectively unreasonable.  *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## B.    Claim one

Petitioner alleges in claim one that his Fifth and Fourteenth Amendment rights to due process and a fair trial were violated by prosecutorial misconduct during closing argument when the prosecutor said: "Obviously, I believe [Petitioner committed these crimes] or I wouldn't be here telling you these things."  (ECF No. 16 at 20-24, 72-77.)  He contends the prosecutor committed misconduct by providing a personal opinion Petitioner was guilty, and also by indicating he would not have brought the charges if Petitioner was not guilty, which implied there was evidence the jury did not know about which had been discovered during the prosecutor's investigation.  (*Id*. at 52-57.)  He argues he was prejudiced by the prosecutor vouching for the strength of the evidence because the evidence was weak, as (1) only Jamil identified him and the United States Supreme Court has recognized that eyewitness identifications are often unreliable, (2) Jamil described the gunman to the police that night as a much larger man than Petitioner, and said the gunman held the gun in his right hand whereas expert testimony indicated a left-handed person like Petitioner would likely have held a gun in his left hand, (3) Wong described the man who robbed Jamil to police that night as at least six inches taller than Petitioner, and (4) no DNA

or fingerprint evidence was introduced, the gun was never recovered, and Petitioner was not found in possession of any of the stolen property.  (*Id*. at 58-61.)  Respondent answers that this claim is procedurally defaulted because the state appellate court found it had been forfeited due to defense counsel's failure to object to the prosecutor's statement, and alternately contends the adjudication of this claim is neither contrary to, nor an unreasonable application of, clearly established federal law.  (ECF No. 17-1 at 4-8.)

Petitioner replies in an entirely conclusory manner that this claim is not procedurally defaulted because the state court did not clearly and expressly apply an adequate and independent state procedural bar.  (ECF No. 21 at 1-2.)  He argues that if the state court would have applied clearly established federal law regarding sufficiency of the evidence, it would have found insufficient evidence to charge him with the crimes because he was not found in possession of a firearm or any stolen property and because he did not match the physical description of the man who robbed Jamil.  (ECF No. 21 at 4-11.)

Petitioner presented this claim to the state appellate and supreme courts on direct appeal.  (ECF Nos. 11-10 at 17-24; ECF No. 11-16 at 7-16.)  The appellate court denied the claim in a reasoned opinion (ECF No. 11-15), and the supreme court summarily denied review.  (ECF No. 11-17.)  The Court applies 28 U.S.C. § 2254(d) to the last reasoned state court decision, the appellate court opinion on direct appeal.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-06 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim [are presumed to] rest upon the same ground.")  The appellate court stated:

> Dunn contends the prosecutor committed misconduct by "impermissibly vouching for the appropriateness of a guilty verdict." Anticipating the Attorney General's forfeiture argument, Dunn further contends his counsel rendered ineffective assistance by failing to object to the prosecutor's remark.  We reject both of Dunn's claims.
>
> A. *Governing Legal Principles*
>
> The applicable federal and state standards regarding prosecutorial misconduct are well established.  "'A prosecutor's . . . intemperate behavior

violates the federal Constitution when it comprises a pattern of conduct "so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process."'" (*People v. Gionis* (1995) 9 Cal.4th 1196, 1214 (Gionis).) "Prosecutorial misconduct that falls short of rendering the trial fundamentally unfair may still constitute misconduct under state law if it involves the use of deceptive or reprehensible methods to persuade the trial court or the jury." (*People v. Panah* (2005) 35 Cal.4th 395, 462 (*Panah*).)

The standard of appellate review for assessing prejudice depends on whether the prosecutorial misconduct amounts to federal constitutional error, or state law error. If federal constitutional error is established, we apply the *Chapman* standard and decide whether the error is harmless beyond a reasonable doubt. (See *People v. Estrada* (1998) 63 Cal.App.4th 1090, 1106-1107, citing *Chapman v. California* (1967) 386 U.S. 18, 24.) If the error does not rise to that level, we apply the *Watson* standard and determine if there is a "reasonable probability that the jury would have reached a more favorable result absent the objectionable comments." (*People v. Sandoval* (1992) 4 Cal.4th 155, 184; see *People v. Watson* (1956) 46 Cal.2d 818, 836.)

The prosecutor has wide latitude to make vigorous arguments, as long as those arguments amount to fair comment on the evidence, including reasonable inferences or deductions drawn from the evidence. (*People v. Cash* (2002) 28 Cal.4th 703, 732.) However, a prosecutor is prohibited from improperly vouching for the government's case. "Improper vouching occurs when the prosecutor either (1) suggests that evidence not available to the jury supports the argument, or (2) invokes his or her personal prestige or depth of experience, or the prestige or reputation of the office, in support of the argument." (*People v. Anderson* (2018) 5 Cal.5th 372, 415 (*Anderson*).) "Nor may prosecutors offer their personal opinions when they are based solely on their experience or on other facts outside the record." (*People v. Huggins* (2006) 38 Cal.4th 175, 206-207 (*Huggins*).)

"(W)hen the claim (of prosecutorial misconduct) focuses upon comments made by the prosecutor before the jury, the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion." (*People v. Morales* (2001) 25 Cal.4th 34, 44.) We evaluate the prosecutor's statements in the context of the whole record (*People v. Centeno* (2014) 60 Cal.4th 659, 667 (Centeno)), and "we 'do not lightly infer' that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements." (*People v. Frye* (1998) 18 Cal.4th 894, 970 (*Frye*), overruled on

another point in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22 (*Doolin*).)
[¶]  "To preserve a claim of prosecutorial misconduct for appeal, a criminal
defendant must make a timely objection, make known the basis of his
objection, and ask the trial court to admonish the jury." (*People v. Brown*
(2003) 31 Cal.4th 518, 553.)

B.  *Additional Factual Background*

During closing argument, the prosecutor made the following remarks,
the italicized portion of which Dunn contends constitutes prosecutorial
misconduct:

> "Which brings us down to the core issue of this case.  Did
> Mr. Dunn do these crimes?  (¶)  *Obviously, I believe he did or I
> wouldn't be here telling you these things*, but let's look at the
> evidence.  (L.J.'s) identification of Mr. Dunn is solid.  (L.J.) sat
> there for about 45 minutes last Thursday and told you exactly
> what happened, what he remembers.  He was hit with prior
> statements he made." (Italics added.)

The prosecutor then went on to discuss, in detail, the evidence
supporting the government's case.  The prosecutor described consistencies in
L.J.'s prior statements and prior and current testimony.  The prosecutor
discussed C.W.'s testimony and the other, extensive evidence introduced at
trial.  Concluding his closing argument, the prosecutor stated, "Ladies and
gentlemen, this is proof beyond a reasonable doubt. . . .  (¶)  Ladies and
gentlemen, that's the guy.  And I'm sure when we give you the chance today
after we're done giving (our) closing arguments, you will agree that Mr. Dunn
is guilty of these three crimes beyond a reasonable doubt."  [¶]  Dunn's
counsel failed to object to any of the prosecutor's closing argument.

C.  *Analysis*

We conclude Dunn forfeited his claim of prosecutorial misconduct by
failing to object to the prosecutor's remark at trial and failing to request a jury
admonition.  (See *People v. Redd* (2010) 48 Cal.4th 691, 746 (requiring
objection and request for jury admonition to preserve prosecutorial
misconduct claim).)  Because "any harm could easily have been cured, the
contentions (of prosecutorial misconduct) are not cognizable on appeal."
(*People v. Carpenter* (1997) 15 Cal.4th 312, 396, abrogated on another ground
as stated in *People v. Diaz* (2015) 60 Cal.4th 1176, 1189-1190.)

Even if Dunn's claim had not been forfeited, we would conclude the prosecutor's brief and fleeting remark, followed immediately by a detailed discussion of the evidence, did not constitute prosecutorial misconduct. "A prosecutor may not express a personal opinion or belief in the guilt of the accused when there is a substantial danger that the jury will view the comments as based on information other than evidence adduced at trial." (*People v. Mincey* (1992) 2 Cal.4th 408, 447.) However, it is not error for a prosecutor to state a belief that a defendant is guilty when that comment is immediately followed by a discussion of the evidence. (*People v. Lopez* (2008) 42 Cal.4th 960, 971 (*Lopez*).)

Here, immediately following the remark in question, the prosecutor summarized the evidence supporting a conviction. The prosecutor discussed L.J.'s identification of Dunn from the robbery; L.J.'s identification of the car Dunn was seen in before, during, and after the robbery; L.J.'s encounter with Dunn at the gas station; L.J.'s identification of Dunn in a photographic lineup; the officer's body camera footage placing Dunn in the car identified at both the robbery and the gas station; as well as the testimony of officers and the other robbery victim. Because the prosecutor was giving his opinion by reference to evidence introduced at trial—and was not vouching for the strength of the government's case based on personal beliefs derived from matters outside the record—no misconduct occurred. (See *People v. Medina* (1995) 11 Cal.4th 694, 757-758 (prosecutor's statement he "'would not deceive'" the jury was not improper when the statement related to evidence presented to the jury); see also *Huggins*, *supra*, 38 Cal.4th at pp. 206-207 (no misconduct based on prosecutor's remarks stating "'Please believe me. (Defense counsel) has lied through his teeth in trying to sell this story to you,'" "because "(i)t is not . . . misconduct to ask the jury to believe the prosecution's version of events as drawn from the evidence").)

We acknowledge it was less than ideal for the prosecutor to state, "I believe (Dunn) did (commit the crimes) or I wouldn't be here telling you these things . . . ." But we have to consider this remark in the context of the whole record, including the qualifying language that immediately followed, i.e., "but let's look at the evidence." Taken as a whole, the prosecutor's closing argument did not invite the jury to convict Dunn based on the prosecutor's personal beliefs or the prestige of his office. (See *Anderson*, *supra*, 5 Cal.5th at p. 415 (no improper vouching where prosecutor stated, "'I believe with all my heart that I've provided you with the evidence to prove'" defendant's guilt).) Dunn has failed to show any reasonable likelihood that the jury construed or applied the remark at issue in an objectionable fashion, and we

do not infer the jury drew the most damaging meaning from this statement. (*Frye*, 18 Cal.4th at p. 970.)  Rather than relying on personal beliefs based on facts not in evidence, the prosecutor expressly linked his comments to the evidence.  On this record, we cannot conclude that the prosecutor's remark infected the trial with such unfairness that it violated Dunn's federal constitutional rights (*Gionis*, *supra*, 9 Cal.4th at p. 1214), or that his statement constituted a deceptive or reprehensible method of attempting to persuade the jury in violation of the state Constitution.  (*Panah*, *supra*, 35 Cal.4th at p. 462.)

Even if we were to find error, there was no prejudice.  First, Dunn complains of a single, brief comment by the prosecutor.  (See *Anderson*, *supra*, 5 Cal.5th at p. 415 ("To the extent the prosecutor's language, 'I believe with all my heart,' could be viewed as invoking his personal prestige or depth of experience, the brief remark could not have been prejudicial.").)  Particularly where the objected to comment is followed by a discussion of the evidence, as here, no prejudice results.  (*People v. Sully* (1991) 53 Cal.3d 1195, 1236 (finding "no conceivable prejudice" to defendant where "a remark that the prosecutor had not deceived the jury and would not lie to it—was brief, innocuous, and followed immediately by references to evidence bearing on witness credibility").)  Second, the court instructed the jury that arguments of counsel are not evidence.  We presume the jury followed these instructions.  (*Doolin*, *supra*, 45 Cal.4th at p. 444.)  Finally, the evidence of Dunn's guilt was overwhelming.  After being held up at gunpoint by Dunn, L.J. recognized the defendant at a gas station the next day—where Dunn made eye contact with L.J. and mouthed "What's up, motherfucker?" before running away when L.J. unsuccessfully chased after him.  L.J. returned to the gas station and took a photograph of Dunn's car, and then provided the information to the police, leading to Dunn's arrest.  L.J. then identified Dunn from a photographic lineup.  Based on this record, we reject Dunn's claim that the prosecutor's brief remark had any effect on the verdict.

(ECF No. 11-15, *People v. Dunn*, No. D073799, slip op. at 5-11.)

Respondent argues the prosecutorial misconduct claim is procedurally defaulted because it was not preserved on appeal due to the failure of defense counsel to object at trial.  (ECF No. 17-1 at 4-6.)  In order to preclude federal habeas review based on a procedural default, a state procedural bar must rest on a state ground which is "independent" of federal law and "adequate" to bar federal review.  *Coleman v. Thompson*, 501 U.S. 722, 735 (1991).  To be "independent" the state law basis for the decision must

not be interwoven with federal law. *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983). In order to be "adequate," the state procedural bar must be "clear, consistently applied, and well-established at the time of the petitioner's purported default." *Calderon v. Bean*, 96 F.3d 1126, 1129 (9th Cir. 1996). A claim may still be procedurally defaulted in this Court even if, as here, the state court reaches the merits in the alternative to imposing a procedural bar. *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) (holding that "as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision" the fact that the state court also reached the merits of a claim does not preclude a procedural default).

Respondent has the initial burden of pleading as an affirmative defense that a failure to satisfy a state procedural rule forecloses federal review. *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003). If Respondent is successful, the burden shifts to Petitioner to challenge the independence or adequacy of the procedural bar. *Id.*

Respondent has carried the initial burden by identifying the contemporaneous objection rule as precluding federal review of this claim. *See Vansickel v. White*, 166 F.3d 953, 957-58 (9th Cir. 1999) (holding that California's contemporaneous objection rule supports a procedural default). Petitioner states in a conclusory manner in his Traverse that the state court did not impose an adequate and independent procedural bar as to his claims (ECF No. 21 at 2-3) and argues that if the state court had properly applied clearly established federal law to his claims it would have found the prosecutor had committed misconduct. (*Id*. at 2-11.) Because Petitioner has failed to satisfy his burden of challenging the independence or adequacy of the state procedural bar, his prosecutorial misconduct claim is procedurally defaulted. *Bennett*, 322 F.3d at 586.

The Court can address the merits of a procedurally defaulted claim if Petitioner can demonstrate cause for his failure to satisfy the state procedural rule and prejudice arising from the default, or if a fundamental miscarriage of justice would result from the Court not reaching the merits of the defaulted claim. *Coleman*, 501 U.S. at 750. Petitioner alleges his trial counsel was ineffective in failing to object, which, if true, could establish cause to

excuse the default.  *See Murray v. Carrier*, 477 U.S. 478, 488 (1986) ("[I]f the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires the responsibility for the default be imputed to the State.")  However, as set forth in the discussion of clam two below, Petitioner has not established constitutionally ineffective assistance of trial counsel in failing to object.  He has therefore failed to demonstrate cause to excuse the default.  He is also unable to establish prejudice because he would not be entitled to federal habeas relief even were the Court to address the merits of the claim.  As discussed in claim two below, the state court correctly found that the brief statement by the prosecutor did not rise to the level of a federal constitutional violation because it was immediately linked to a discussion of the evidence, making it unlikely the jury would have ignored their repeated instructions that they were to base their verdict on the evidence presented at trial and the law as given by the trial judge, and to ignore any argument of counsel which conflicted with that law and evidence.  *See Greer v. Miller*, 483 U.S. 756, 765 (1987) (holding that "to constitute a due process violation, prosecutorial misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.'"), quoting *United States v. Bagley*, 473 U.S. 667, 676 (1985).  In addition, as evident in the discussion regarding sufficiency of the evidence in claim three below, a fundamental miscarriage of justice would not result from a default because there is strong evidence of Petitioner's guilt.  *See Schlup v. Delo*, 513 U.S. 298, 316 (1995) (holding that a showing of fundamental unfairness needed to overcome a procedural default requires a presentation of "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial.")

Accordingly, habeas relief is denied as to claim one on the basis it is procedurally defaulted.

## C.    Claim two

Petitioner alleges in claim two he received constitutionally ineffective assistance of counsel by his trial counsel's failure to object to the statement by the prosecutor expressing a personal belief the evidence warranted a guilty verdict.  (ECF No. 16 at 9, 24-26.)  He

argues that although the state appellate court correctly identified *Strickland v. Washington*, 466 U.S. 668 (1984) as the federal law applicable to this claim, it unreasonably applied it. (*Id*. at 25.)  He argues that under a proper application of *Strickland* he was prejudiced by his counsel's failure to object because the weak evidence of his guilt was overcome by the prosecutor's vouching for its strength.  (*Id*. at 25-26.)

Respondent answers that the state appellate court's denial of this claim, on the basis the remark did not rise to the level of prosecutorial misconduct so as to warrant an objection, but even if a reasonable attorney might have objected defense counsel may have made a tactical decision not to object, does not involve an unreasonable application of *Strickland*.  (ECF No. 17-1 at 7-8.)  Petitioner replies that the state court did not sufficiently articulate how it applied the *Strickland* standard, and that it is clear his trial counsel conspired with the prosecutor to convict him because they both obviously knew there was insufficient evidence of his guilt.  (ECF No. 21 at 10-11.)

The appellate court opinion on direct appeal is the last reasoned state court decision with respect to claim two.  It states:

> As already discussed, a claim of prosecutorial misconduct is preserved for appeal only if the defendant makes a timely objection and requests an admonition to cure any alleged harm.  (*Centeno*, *supra*, 60 Cal.4th at p. 674; *People v. Thornton* (2007) 41 Cal.4th 391, 454.)  However, "(a) defendant whose counsel did not object at trial to alleged prosecutorial misconduct can argue on appeal that counsel's inaction violated the defendant's constitutional right to the effective assistance of counsel." (*Lopez*, *supra*, 42 Cal.4th at p. 966.)  Recognizing his claim of prosecutorial misconduct was forfeited because there was no objection, Dunn alternatively contends his counsel rendered ineffective assistance by failing to object.

> To prevail on an ineffective assistance of counsel claim, Dunn "bears the burden of showing by a preponderance of the evidence that (1) counsel's performance was deficient because it fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficiencies resulted in prejudice." (*Centeno*, *supra*, 60 Cal.4th at p. 674; see *Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*).)

/ / /

Because we have concluded no prosecutorial misconduct occurred, the failure of Dunn's counsel to object did not constitute ineffective assistance of counsel. (*People v. Lucas* (1995) 12 Cal.4th 415, 494 ("failure to object was not ineffective assistance of counsel, as no prejudicial prosecutorial misconduct occurred").) On direct appeal, we "'will reverse convictions on the ground of inadequate counsel only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for his act or omission.'" (*People v. Zapien* (1993) 4 Cal.4th 929, 980.) Here, where the prosecutor's remark was brief and immediately followed by a discussion of the evidence, defense counsel could have made a rational tactical decision not to object. (See *People v. Maury* (2003) 30 Cal.4th 342, 419 ("(D)eciding whether to object is inherently tactical, and the failure to object will rarely establish ineffective assistance.").) Even assuming reasonable counsel would have objected and the court would have provided an admonition, there is no reasonable probability that the result in this case would have been different. (*Strickland*, *supra*, 466 U.S. at p. 694 ("A reasonable probability is a probability sufficient to undermine confidence in the outcome.").) Given the overwhelming evidence of Dunn's guilt, Dunn suffered no prejudice by his counsel's failure to object to the prosecutor's remark.

(ECF No. 11-15, *People v. Dunn*, No. D073799, slip op. at 11-13.)

For ineffective assistance of counsel to provide a basis for federal habeas relief, Petitioner must show counsel's performance was deficient, which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. He must also show counsel's deficient performance prejudiced the defense, which requires showing that "counsel's errors were so serious as to deprive [Petitioner] of a fair trial, a trial whose result is reliable." *Id*. To show prejudice, Petitioner need only demonstrate "a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "The standards created by *Strickland* and section 2254(d) are both highly deferential and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105. The standards are "difficult to meet" and "demands that state court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

/ / /

17

The appellate court identified and applied both prongs of the *Strickland* standard.  It found defense counsel was not deficient in failing to object to a remark which did not rise to the level of prosecutorial misconduct, but that even if a reasonable attorney may have objected, it was just as reasonable that defense counsel had a tactical reason not to object to the brief comment which, because it was immediately followed by a review of the evidence, the jury was unlikely to have construed to be vouching.  The court also found Petitioner was not prejudiced by the failure to object because an objection would have generated an admonishment to the jury which would have merely repeated their instruction that the argument of counsel is not evidence, and that *Strickland* prejudice was particularly unlikely in light of the overwhelming evidence of Petitioner's guilt.

As to the first prong, Petitioner has not overcome the strong presumption that his counsel's failure to object fell "within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689; *see also Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) (recognizing a strong presumption counsel took actions "for tactical reasons rather than through sheer neglect"), citing *Strickland*, 466 U.S. at 690 (holding that counsel is "strongly presumed" to make decisions in the exercise of professional judgment).  The prosecutor's remark did not amount to prosecutorial misconduct, which requires it to be "of sufficient significance to result in the denial of [Petitioner]'s right to a fair trial." *Bagley*, 473 U.S. at 676.  The remark had very little significance in that it was followed by a discussion of the evidence which placed it in context, and because moments before the prosecutor's remark the jury was reminded by the trial judge of their instruction that the remarks of counsel were not evidence.  (ECF No. 18-1 at 26-27: "Remember the arguments of counsel are not evidence.  If either attorney misstates the evidence or law, you will rely on the evidence presented in the trial and the law as presented by me.")  In addition, rather than object to a statement which did not rise to the level of prosecutorial misconduct, defense counsel chose to respond to the prosecutor's remark by informing the jury of her own personal belief the evidence did not warrant a guilty verdict.  (ECF No. 11-8 at 45: "[I]t is incredulous to me that this is the truth about the person charged.")  Thus, an

objection would have merely drawn an admonition identical to the instruction the jury was reminded of moments earlier and would have likely stopped defense counsel from expressing her own personal opinion to the jury.  *See Strickland*, 466 U.S. at 689 ("There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way.")  The state court application of the *Strickland* performance prong is objectively reasonable.  *Id.* at 687 (holding that deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.")

The state court also correctly found that even if a reasonable defense counsel might have objected, there was no *Strickland* prejudice because any curative instruction would have merely repeated the instruction that the jury was to rely on the evidence as presented at trial and the law as given by the trial judge to reach a verdict, and not the argument of counsel if it conflicted with those in any way.  Petitioner has not shown "a probability sufficient to undermine confidence in the outcome" required to demonstrate *Strickland* prejudice, *see id.* at 694, because the jurors are presumed to understand and follow the instructions they are given.  *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).  That presumption can be overcome where there is "a strong likelihood that the effect of the [error] would be devastating to the defendant."  *Greer*, 483 U.S. at 766 n.8 (1987).  Petitioner argues that the prosecutor's vouching for the strength of the evidence mattered because the eyewitness identification of him as the perpetrator was weak.  However, the jury heard evidence of the physical descriptions of the men who robbed Jamil and Wong given to the police that night by them and heard argument of both counsel regarding inconsistencies between those descriptions and Petitioner's physical description when he was arrested several months later.  In addition, Jamil testified he stood face to face with Petitioner during the crimes, that they recognized each other the next day when they happened upon each other while Petitioner was near the car used in the crimes, which was registered to him, and Petitioner ran away, and Jamil identified Petitioner in a photographic

lineup and in person at trial.  As discussed in claim three below, the Court rejects Petitioner's argument that eyewitness testimony alone is insufficient to support the guilty verdicts in the absence of physical evidence and with inconsistent police statements.  *See Tibbs v. Florida*, 457 U.S. 31, 45 n. 21 (1982) (finding that eyewitness testimony alone is sufficient to satisfy the sufficiency of evidence standard for federal due process).  Because defense counsel's failure to object does not "undermine confidence in the outcome" of the trial, the state court determination that Petitioner was not prejudiced by his counsel's failure to object, like the finding of a lack of deficient performance, is objectively reasonable. *Strickland*, 466 U.S. at 694; *see also Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect."); *Strickland*, 466 U.S. at 687 ("Representation is constitutionally ineffective only if it 'so undermined the proper functioning of the adversarial process' that the defendant was denied a fair trial.")

In the final aspect of claim two, Petitioner claims the cumulative effect of the prosecutorial misconduct and ineffective assistance of counsel violated federal due process. (ECF No. 16 at 57-63.)  The last reasoned decision of the state court as to this claim is contained in a footnote in the appellate court opinion on direct appeal, which states:

> Dunn also contends the cumulative prejudice of the prosecutor's misconduct and his counsel's ineffective assistance warrants reversal of his convictions.  We have rejected Dunn's claims of misconduct and ineffective assistance of counsel.  Whether viewed individually or in combination, Dunn has not established prejudicial error.  (*People v. Martinez* (2003) 31 Cal.4th 673, 704.)

(ECF No. 11-15, *People v. Dunn*, No. D073799, slip op. at 13 n.3.)

The Ninth Circuit, applying AEDPA, has stated that: "The Supreme Court has clearly established that the combined effect of multiple trial court errors violates due process where it renders the resulting trial fundamentally unfair."  *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007), citing *Chambers v. Mississippi*, 410 U.S. 284, 298, 302-03

(1973).  Where "there are a number of errors at trial, 'a balkanized, issue-by-issue harmless error review' is far less effective than analyzing the overall effect of all the errors in the context of the evidence introduced at trial against the defendant."  *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996), quoting *United States v. Wallace*, 848 F.2d 1464, 1476 (9th Cir. 1988).  "Where the government's case is weak, a defendant is more likely to be prejudiced by the effect of cumulative errors."  *Frederick*, 78 F.3d at 1381.

As set forth above, there are no errors to accumulate.  Even if there were, this is not a case where the evidence was weak.  Rather, as discussed below in claim three, Petitioner and the victim were face to face during the crimes, the victim recognized Petitioner the next day near the car used in the crimes, which was registered to Petitioner, causing Petitioner to flee, and thereafter identified Petitioner in a photographic lineup and at trial.  Even if the prosecutor's remark and defense counsel's failure to object were trial errors, the state court's determination that they did not cumulatively violate due process is objectively reasonable because, as with the individual claims, confidence in the outcome of the trial has not been undermined by the prosecutor's statement or defense counsel's failure to object.  *See Parle*, 505 F.3d at 928 ("[T]he fundamental question in determining whether the combined effect of trial errors violated a defendant's due process rights is whether the errors rendered the criminal defense 'far less persuasive,' and thereby had a 'substantial and injurious effect or influence' on the jury's verdict."), quoting *Chambers*, 410 U.S. at 294 and *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

The state court adjudication of claim two is neither contrary to, nor an unreasonable application of, clearly established federal law.  Neither is there any basis to find it is based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Accordingly, habeas relief is denied as to claim two.

### D.   Claim three

In his final claim, Petitioner argues that the unreliable, inconsistent, conflicting, false and prevaricated testimony of the intoxicated victims is insufficient to prove he robbed Jamil and took his car in light of the absence of physical evidence, the fact that he was not

found in possession of the gun or the stolen property, and the inconsistencies in the victims' description of the robber. (ECF No. 16 at 9, 27-28.) He also claims his appellate counsel rendered ineffective assistance by failing to raise this claim on appeal. (*Id*. at 28.)

Respondent answers that this claim is procedurally defaulted as a result of the application by the state court of a procedural bar prohibiting raising claims on state habeas which could have been but were not raised on direct appeal. (ECF No. 17-1 at 5.) Petitioner replies it was only after his appeal was final he discovered that if the state courts had been given the opportunity to apply the federal constitutional standards for insufficiency of the evidence as set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) and *In re Winship*, 397 U.S. 358, 363-64 (1970), they would have found insufficient evidence to establish guilt and would have granted relief on his prosecutorial misconduct and ineffective assistance of counsel claims. (ECF No. 21 at 4-5.)

The last reasoned state court opinion regarding both aspects of this claim is the appellate court order denying habeas relief, which stated:

> Dunn is not entitled to habeas corpus relief. Filed more than two years after he was convicted with no explanation for the delay, the petition is barred as untimely. (*In re Reno* (2012) 55 Cal.4th 428, 459-460; *In re Swain* (1949) 34 Cal.2d 300, 302.) The petition is further barred because the claims of instructional error and insufficiency of the evidence could have been, but were not, urged on appeal. (*In re Reno*, *supra*, at p. 490; *In re Dixon* (1953) 41 Cal.2d 756, 759.) "In this state a defendant is not permitted to try out his contentions piecemeal by successive proceedings attacking the validity of the judgment against him." (*In re Connor* (1940) 16 Cal.2d 701, 705.) Additionally, "claims of the insufficiency of evidence to support a conviction are not cognizable in a habeas corpus proceeding." (*In re Reno, supra*, at p. 505.)

(ECF No. 18-2, *In re Dunn*, No. D077447, order at 2 (Cal.App.Ct. Apr. 9, 2020).)

With respect to the insufficiency of the evidence aspect of claim three, Respondent correctly observes that the state court application of California's *Dixon* bar, which provides that state habeas is not available for claims which could have been raised on appeal but were not, has been found to be an adequate and independent state procedural bar sufficient

to uphold a procedural default in this Court.  *See Johnson v. Lee*, 578 U.S. __, 136 S.Ct. 1802, 1807 (2016) (holding that California's *Dixon* bar is adequate to support a procedural default); *Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000) (holding that California's *Dixon* rule is independent of federal law when applied after 1988).  Accordingly, the insufficiency of the evidence aspect of claim three is procedurally defaulted.

With respect to the ineffective assistance of appellate counsel aspect of claim three, the state appellate court order denying habeas relief did not refer to it specifically as it did the insufficiency of the evidence claim but denied the petition in which it was raised as untimely.  California's timeliness rule is also adequate and independent so as to support a procedural default in federal court.  *See Walker v. Martin*, 562 U.S. 307, 312-21 (2011) (holding that California's timeliness rule is clearly established and consistently applied); *Bennett*, 322 F.3d at 582-83 (holding that California's timeliness rule is independent of federal law).  Accordingly, both aspects of claim three are procedurally defaulted.

As with claim one, in order for this Court to address the merits of claim three, Petitioner must demonstrate cause for his failure to satisfy the state procedural rules and prejudice arising from the defaults, or that a fundamental miscarriage of justice would result from the Court not reaching the merits of the defaulted claim.  *Coleman*, 501 U.S. at 750.  Petitioner cannot rely on his claim of ineffective assistance of appellate counsel to excuse the default because that claim is procedurally defaulted.  *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (holding that a claim of ineffective assistance of counsel can only be used to establish cause to excuse a default if it was presented to the state court and not procedurally defaulted).

Petitioner contends in his Traverse he has shown cause because: "After exhausting his appeal Dunn discover [sic] based on the trial transcripts, and clearly established U.S. Supreme Court case laws . . . there was no substantial evidence to support any of the" charges in this case.  (ECF No. 21 at 4.)  Even if Petitioner could demonstrate cause by showing he was unable to identify claim three until it was too late to present it to the state court, there is no prejudice because both aspects of claim three lack merit.  He correctly

identifies the federal constitutional standards applicable to a claim of insufficiency of the evidence as *Winship* and *Jackson*. *See Winship*, 397 U.S. at 364 ("[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."); *Jackson*, 443 U.S. at 324 (holding that the Fourteenth Amendment's Due Process Clause is violated, and an applicant is entitled to federal habeas corpus relief, "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.")  However, he has not satisfied those standards.

The evidence presented to the jury was that Jamil stood face to face with the Petitioner while being robbed at gunpoint, allowing him an excellent opportunity to see Petitioner.  The victim then recognized Petitioner when they happened upon each other the next day and was recognized in turn by Petitioner who mouthed the words: "What's up motherfucker" when they made eye contact.  Petitioner fled, showing a consciousness of guilt, and the victim photographed the license plate of the car used in the crimes which was registered to Petitioner.  The victim then chose Petitioner's photograph from a line up and identified him in court at trial.  The *Jackson* standard is clearly satisfied by that evidence. *See Coleman v. Johnson*, 566 U.S. 650, 656 (2012) ("The jury in this case was convinced, and the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality."); *Jackson*, 443 U.S. at 319, 324 (holding that federal habeas courts must consider the evidence "in the light most favorable to the prosecution," and must respect the province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts by assuming the jury resolved all conflicts in a manner that supports the verdict).  His contention that the eyewitnesses, both of whom testified at trial, gave inconsistent statements or unreliable identifications does not support a *Jackson* claim. *See Schlup*, 513 U.S. at 330 ("[U]nder *Jackson*, the assessment of the credibility of witnesses is generally beyond the scope of review.")  Likewise, his argument that the lack of physical evidence tying him to the crimes and the fact that he was not found in possession of any of the stolen

property does not demonstrate insufficiency of the evidence.  *See Tibbs*, 457 U.S. at 45 n. 21 (finding that eyewitness testimony alone is sufficient to satisfy the *Jackson* standard).

The ineffective assistance of appellate counsel claim based on a failure to raise the meritless insufficiency of the evidence claim is also without merit.  *See Smith v. Robbins*, 528 U.S. 259, 285-88 (2000) (holding that appellate counsel's failure to raise a meritless claim does not constitute constitutionally ineffective assistance of counsel).  For the same reasons, Petitioner has not shown a miscarriage of justice arising from the default of any claim.  *See Schlup*, 513 U.S. at 316 (holding that a showing of fundamental unfairness needed to overcome a procedural default requires a presentation of "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial.")

Accordingly, habeas relief is denied as to claim three on the basis it is procedurally defaulted and, even if Petitioner could overcome the default, it is without merit.

Petitioner's request for an evidentiary hearing in his Traverse (ECF No. 21 at 2) is denied because, even assuming the allegations in his First Amended Petition are true, the state court record provides an adequate basis to adjudicate his claims.  *See Campbell v. Wood*, 18 F.3d 662, 679 (9th Cir. 1994) (holding that an evidentiary hearing is not necessary where the federal claim can be denied on the basis of the state court record, and where the allegations, even if true, do not provide a basis for relief).

## VI. Certificate of Appealability

"[T]he only question [in determining whether to grant a Certificate of Appealability] is whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Buck v. Davis*, 580 U.S. ___, 137 S.Ct. 759, 773 (2017).  Under that standard, the Court finds that a Certificate of Appealability is not appropriate as to any claim or procedural issue presented in the First Amended Petition.

/ / /

/ / /

## VII.   Conclusion and Order

Based on the foregoing, the First Amended Petition for a Writ of Habeas Corpus (ECF No. 16) is **DENIED** and the Court **DECLINES** to issue a Certificate of Appealability.

The Clerk of Court shall enter judgment accordingly.

DATED: December 1, 2020

Hon. Larry A. Burns
Chief United States District Judge